506 P.3d 77
2021 COA 145
IN RE the MARRIAGE OF Jeremy STRADTMANN, Appellant,
and
Andrea Stradtmann, Appellee,
and
Concerning El Paso County Child Support Services, Intervenor.
Court of Appeals No. 20CA1536
Colorado Court of Appeals, Division III.
Announced December 2, 2021
Beltz & West, P.C., Daniel A. West, Colorado Springs, Colorado, for Appellant
Ariel J. Baty, Colorado Springs, Colorado, for Appellee
Samuel W. Clopton, Colorado Springs, Colorado, for Intervenor
Opinion by JUDGE LIPINSKY
¶ 1 The first words of the Colorado maintenance statute recite the General Assembly's finding that "[t]he economic lives of spouses are frequently closely intertwined in marriage and that it is often impossible to later segregate the respective decisions and contributions of the spouses" and that, for this reason, "awarding spousal maintenance may be appropriate if a spouse needs support and the other spouse has the ability to pay support." § 14-10-114(1)(a), C.R.S. 2021. A Colorado district court is authorized to award maintenance "for a term that is fair and equitable to both parties," § 14-10-114(2), and "shall determine the term for payment of temporary maintenance" if it finds an award of temporary maintenance is warranted. § 14-10-114(4)(a).
¶ 2 But is a district court empowered to award maintenance retroactively to a date before it acquired personal jurisdiction over the parties? As a matter of first impression, we conclude that the broad language of the maintenance statute does not preclude a district court from awarding maintenance retroactively to a date preceding the court's acquisition of personal jurisdiction over the parties.
¶ 3 In this case, Jeremy Stradtmann (father) appeals the child support and maintenance awards entered as part of the dissolution of his marriage to Andrea Stradtmann (mother). We vacate the judgment in part, affirm in part, reverse in part, and remand for further proceedings.
I. Facts
¶ 4 Father moved out of the marital home in February 2019 when the parties separated. He filed a petition to dissolve the marriage the next month.
¶ 5 During the dissolution proceedings, the parties entered into a stipulated temporary order that specified father's financial obligations to mother from July 2019 through the date on which the court entered permanent orders. Father agreed to pay spousal maintenance, child support, and all expenses associated with the marital home. As relevant here, father agreed to pay mother $3,740 — 506 P.3d 80 $2,822 in spousal maintenance and $918 in child support — for the month of July 2019. A district court magistrate approved the stipulation and made it an order of the court.
¶ 6 The district court entered a decree dissolving the parties’ marriage in 2020. The court issued oral rulings that it later reduced to writing. The district court ordered father to pay $1,065 in monthly child support for the parties’ two minor children and $1,399 in monthly maintenance for two years. In addition, the district court found that father owed $18,700 in retroactive child support and retroactive maintenance for the months of February 2019 through June 2019. (This figure represented five months of the $3,740 monthly payments.) After giving father credit for an overpayment, the court ordered him to pay mother "a total of $17,803.73 in retroactive support" for that time period.
¶ 7 Father contends on appeal that the district court erred by awarding child support and temporary maintenance retroactively to February 2019 because the court did not obtain personal jurisdiction over him and mother until March 28, 2019, and that the court made insufficient findings of fact and conclusions of law to support its permanent maintenance award.
II. Preservation ¶ 8 Mother contends that father's arguments are not preserved for appeal because he did not object to her request for retroactive child support or maintenance before the hearing on permanent orders or object to the district court's oral rulings at the conclusion of the hearing. We conclude that his arguments are preserved.
¶ 9 Father specifically objected to mother's maintenance calculations and to her requests for retroactive child support and maintenance in the parties’ joint trial management certificates and at the hearing. See In re Estate of Owens , 2017 COA 53, ¶ 21, 413 P.3d 255, 261-62 ("Where an issue was brought to the district court's attention and the court ruled on it, it is preserved for appellate review; no talismanic language is required to preserve an issue.").
¶ 10 In any event, father was not required to object to the oral rulings to preserve his appellate arguments. See People in Interest of D.B. , 2017 COA 139, ¶ 30, 414 P.3d 46, 51 ("[A] party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings."); C.R.C.P. 52 ("Neither requests for findings nor objections to findings rendered are necessary for purposes of review.").
III. Retroactive Child Support ¶ 11 Father contends, mother concedes, and we agree that the district court erred by making father's child support obligation retroactive to February 2019. Section 14-10-115(2)(a), C.R.S. 2021, allows the court to order either or both parents to pay child support "for a time period that occurred after the date of the parties’ physical separation or the filing of the petition or service upon the respondent, whichever date is latest." Here, the latest of the three dates was March 28, 2019, when mother waived service of process. In light of the unambiguous statutory language, we vacate that portion of the permanent orders requiring father to pay child support retroactively to a date before March 28, 2019.
IV. Retroactive Maintenance
¶ 12 Father similarly contends that the district court erred by ordering him to pay maintenance retroactively beginning in February 2019 because the court did not obtain personal jurisdiction over the parties until March 2019. We disagree based on the language of the maintenance statute. ¶ 13 "[P]ersonal jurisdiction over a defendant is required before a court may enter enforceable orders ...." Giduck v. Niblett , 2014 COA 86, ¶ 9, 408 P.3d 856, 862. "In dissolution of marriage proceedings, a trial court must have personal jurisdiction over the parties as well as subject matter jurisdiction to enter orders establishing financial responsibilities and property interests of the parties." In re Marriage of Booker , 833 P.2d 734, 737 (Colo. 1992) ; see also In re Marriage of Lohman , 2015 COA 134, ¶ 29 n.7, 361 P.3d 1110, 1116 n.7 (holding that financial orders, including those for child 506 P.3d 81 support and maintenance, are in personam judgments, and for such judgments the court must exercise personal jurisdiction over the respondent).
¶ 14 Whether a court has personal jurisdiction over a party is a question of law that we review de novo. Giduck , ¶ 11, 408 P.3d at 862.
¶ 15 The district court acquired personal jurisdiction over the parties in March 2019 when they submitted themselves to the jurisdiction of the district court — father through his March 11, 2019, filing of the dissolution petition, and mother through her March 28, 2019, waiver of service of the petition and entry of appearance. See In re Marriage of Jeffers , 992 P.2d 686, 689 (Colo. App. 1999) (holding that a party enters a general appearance and consents to the personal jurisdiction of a court by seeking relief in a form that acknowledges the personal jurisdiction of the court; the party must have knowledge of the pending proceeding and must intend to appear). ¶ 16 But there is an important distinction between the date on which a court acquires personal jurisdiction over the parties and whether, once having acquired personal jurisdiction, it may enter retroactive orders with an effective date predating the court's authority to exercise personal jurisdiction over the parties.
¶ 17 Here, once the court acquired personal jurisdiction, it possessed the authority to enter enforceable orders for child support and maintenance. See Booker , 833 P.2d at 737 ; Lohman , ¶ 29 n.7, 361 P.3d at 1116 n.7. After reviewing the maintenance statute, we conclude that the court was authorized to award mother retroactive temporary maintenance beginning in February 2019. ¶ 18 When interpreting the maintenance statute, we read and consider the statute as a whole and interpret it in a manner that gives consistent, harmonious, and sensible effect to all its parts. In re Marriage of Herold , 2021 COA 16, ¶ 8, 484 P.3d 782, 784. In doing so, "we adopt an interpretation that best effectuates the legislative purposes." In re Marriage of Vittetoe , 2016 COA 71, ¶ 4, 488 P.3d 103, 105. ¶ 19 Before 2014, the maintenance statute provided that "[t]he period of time covered by any temporary maintenance ordered ... shall begin at the time of the parties’ physical separation or filing of the petition or service upon the respondent, whichever occurs last." § 14-10-114(2)(c), C.R.S. 2013. However, the legislature removed this language when it repealed and reenacted the statute effective January 1, 2014. Ch. 176, sec. 1, § 14-10-114, 2013 Colo. Sess. Laws 639. In place of the quoted language, the legislature directed that "[t]he court shall determine the term for payment of temporary maintenance." § 14-10-114(4)(a)(II), C.R.S. 2021. Thus, "[n]othing in the current statute tells the court when it must begin an award of temporary maintenance or restricts the court's ability to award it retroactively." Herold , ¶ 12, 484 P.3d at 785. At the same time, the General Assembly revised the statutory language governing the timing of maintenance awards to state that courts are authorized to award maintenance "for a term that is fair and equitable to both parties." § 14-10-114(2).
¶ 20 The removal of the restrictive temporal language from the prior version of the maintenance statute and the inclusion of the open-ended language in the current statute has "expanded the district court's discretion in determining a fair and equitable term of maintenance." See Herold , ¶ 13, 484 P.3d at 785. More specifically, it signifies the legislature's intent "for the district court to retain broad discretion" over the starting date for a temporary maintenance award. See Vittetoe , ¶ 14, 488 P.3d at 106 ; Herold , ¶ 13, 484 P.3d at 785 ; 24A Am. Jur. 2d Divorce & Separation § 603, Westlaw (database updated August 2021) ("[T]he determination as to when an allowance for temporary alimony should begin is generally within the discretion of the court."), cited with approval in Herold , ¶ 13, 484 P.3d at 785. In Herold , a division of this court held that courts may award temporary maintenance retroactively, although, in that case, the wife did not seek retroactive temporary maintenance as of a date preceding the date on which the court acquired personal jurisdiction over the parties. Herold , ¶ 4, 484 P.3d at 784 (noting that the district court had 506 P.3d 82 ordered temporary maintenance retroactive to "the commencement of the dissolution proceeding").
¶ 21 As applied here, once the court acquired personal jurisdiction over the parties, it possessed the authority to order father to pay mother retroactive temporary maintenance beginning in February 2019.
¶ 22 Father argues that we should interpret the current maintenance statute as though it contains the temporal language found in the child support statute, section 14-10-115(2)(a), and hold that the effective date of a maintenance order cannot predate the date of the petition. We are not persuaded. ¶ 23 Statutes pertaining to the same subject matter must be harmonized to fulfill the intent of the General Assembly and to avoid inconsistency. People v. Harris , 914 P.2d 425, 429 (Colo. App. 1995) ; see also In re Marriage of Joel , 2012 COA 128, ¶ 19, 404 P.3d 1251, 1254 (reviewing court reads the relevant provisions of the Uniform Dissolution of Marriage Act, sections 14-10-101 to - 133, C.R.S. 2021, together, harmonizing them if possible). "In pari materia is a rule of statutory construction which requires that statutes relating to the same subject matter be construed together in order to gather the legislature's intent from the whole of the enactments." Walgreen Co. v. Charnes , 819 P.2d 1039, 1043 n.6 (Colo. 1991).
¶ 24 Assuming for purposes of this analysis that sections 14-10-114(4) and 14-10-115(2)(a) pertain to the same subject matter, reading them together shows that the legislature intended to impose different starting dates for awards of child support and awards of maintenance. If the General Assembly wanted to preclude the district courts from starting temporary maintenance obligations before the petition date, it would not have removed the reference to "at the time of the parties’ physical separation or filing of the petition or service upon the respondent, whichever occurs last," when it repealed and reenacted the maintenance statute. See Acad. of Charter Schs. v. Adams Cnty. Sch. Dist. No. 12 , 32 P.3d 456, 464 (Colo. 2001) (noting the presumption that, by amending the law, the legislature intends to change it).
¶ 25 For these reasons, we hold that the current version of the maintenance statute authorizes district courts to enter retroactive temporary maintenance awards for a term commencing before the filing of the dissolution petition.
¶ 26 Because father does not challenge the amount of retroactive temporary maintenance awarded or the findings supporting the award, we do not consider the award on the merits. See Herold , ¶¶ 13-14, 26, 484 P.3d at 785, 787 (holding that a temporary maintenance award must be fair and equitable under the totality of the circumstances and made after considering a list of non-exclusive statutory factors); § 14-10-114(4)(a) ; see also § 14-10-114(2), (3)(e).
V. Permanent Maintenance
¶ 27 Father contends that the district court made insufficient factual findings and conclusions of law to support its permanent maintenance award. We agree. ¶ 28 Section 14-10-114(3) details a specific process the district court must follow when considering a maintenance request. In re Marriage of Wright , 2020 COA 11, ¶ 13, 459 P.3d 757, 761.
¶ 29 Subsection (3)(a)(I) provides that the court "shall" make initial oral or written findings concerning five factors, one of which is "[w]hether maintenance awarded pursuant to this section would be deductible for federal income tax purposes by the payor and taxable income to the recipient." § 14-10-114(3)(a)(I)(E) ; see Wright , ¶ 19, 459 P.3d at 762 (holding that the first step in entering a maintenance award requires specific findings, either written or oral); see also People in Interest of C.N. , 2018 COA 165, ¶ 35, 431 P.3d 1219, 1226 (holding that the word "shall" in a statute has a mandatory connotation).
¶ 30 Subsection (3)(a)(II) provides that, after making the five initial findings, the court "shall" determine the amount and term of the maintenance award, if any, that is fair and equitable to both parties after considering (1) the guideline amount and term of maintenance set forth in section 14-10-114(3)(b), if applicable; (2) the factors relating 506 P.3d 83 to the amount and term of maintenance as set forth in section 14-10-114(3)(c) ; and (3) whether the party seeking maintenance has met the requirement for a maintenance award pursuant to section 14-10-114(3)(d). § 14-10-114(3)(a)(II) ; see Wright , ¶ 15, 459 P.3d at 761.
¶ 31 Subsections (3)(b) and (3)(d) require the court to make further factual findings. Under subsection (3)(b), if the duration of the parties’ marriage is at least three years and their combined annual adjusted gross income does not exceed $240,000, the court "shall make additional oral or written findings concerning the duration of the marriage in whole months and the advisory guideline amount and term of maintenance." § 14-10-114(3)(b). Under the relevant part of subsection (3)(d), the court "shall" award maintenance "only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment." § 14-10-114(3)(d). ¶ 32 Subsection (3)(c) does not require the court to make specific factual findings. See Wright, ¶ 20, 459 P.3d at 762. However, in any maintenance determination, the court must make sufficiently explicit factual findings to give the reviewing court a clear understanding of the basis of its order; a "generalized statement" that it looked at the statutory factors is insufficient. Id. ; see also § 14-10-114(3)(e) ("The court shall make specific written or oral findings in support of the amount and term of maintenance awarded pursuant to this section or an order denying maintenance."). ¶ 33 Here, the district court was required to, but did not, make any findings on the federal tax implications of the maintenance award. See § 14-10-114(3)(a)(I)(E). Nor did the court make the required findings concerning the advisory guideline amount and term of maintenance, including a determination of whether the advisory guideline amount was or was not reasonable. See § 14-10-114(3)(a)(II)(A), (3)(b) ; see also Wright , ¶ 15, 459 P.3d at 761 (holding that the subsection (3)(b) guidelines do not create a presumptive amount or term of maintenance). Finally, there is no indication that the court considered the stipulated temporary order requiring father to pay spousal maintenance and home expenses pending permanent orders. See § 14-10-114(3)(c)(VIII) (providing that a relevant factor in a maintenance determination is the amount and duration of temporary maintenance). To the contrary, the court expressly rejected giving father any credit for his payments because it did not want to calculate them.
¶ 34 Because the court failed to make certain mandatory findings and did not sufficiently explain the basis for the amount and duration of the maintenance award, we reverse and remand the case for "meaningful consider[ation]" of the statutory factors. See Wright , ¶¶ 19-20, 22-23, 459 P.3d at 762-63 (reversing and remanding a maintenance determination for "meaningful consider[ation]" after the court failed to make most of the findings under subsection (3)(a)(I), appeared to give the advisory guideline presumptive effect, and did not demonstrate consideration of the subsection (3)(c) factors). ¶ 35 On remand, the district court must follow the procedure specified by section 14-10-114(3), making findings where required and addressing the factors relevant to its determination. See Wright, ¶ 23, 459 P.3d at 763. The district court must make sufficiently explicit findings of fact to give us a clear understanding of the basis of its order. Id. at ¶ 20, 459 P.3d at 762 ; see also In re Marriage of Gibbs , 2019 COA 104, ¶ 9, 446 P.3d 968, 970. "Because maintenance is based on the parties’ financial circumstances at the time the order is entered, the district court should consider the parties’ current circumstances on remand." Wright , ¶ 24, 459 P.3d at 763.
VI. Conclusion
¶ 36 That portion of the judgment awarding retroactive child support before March 28, 2019, is vacated. That portion of the judgment awarding permanent maintenance is reversed, and the case is remanded for further proceedings consistent with this opinion. 506 P.3d 84 In all other respects, the judgment is affirmed.
JUDGE BROWN and JUSTICE MARTINEZ* concur.
--------
Notes:
* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2021.
--------